1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          EASTERN DISTRICT OF CALIFORNIA

10

11   United States of America, State of          No. 2:13-cv-01004-TLN-AC
     California and Nevada, Placer and Sierra
12   Counties, ex rel. Vicki L. Miller, Jennifer
     Bente, Priscilla Frazier, Linda Garcia,
13   Mary M. Graham, Bonnie Hampton, and          **ORDER GRANTING IN PART AND**
     Tamara Nichols,                              **DENYING IN PART DEFENDANTS'**
14              Plaintiffs and Relators,          **MOTIONS TO DISMISS PLAINTIFFS'**
                                                  **SECOND AMENDED COMPLAINT**
15   vs.

16   Community Recovery Resources, Inc., a
     California Corporation, Sierra Council on
17   Alcoholism and Drug Dependence, a
     Merged California Corporation, Ron
18   Abram, Jeremy Ashurst, Pauline Bowman,
     Doug Carver, Kevin M. Cassidy, Aaron J.
19   Cleveland, M.D., Chuck Coovert, Warren
     A. Daniels, Sommer Dobbins, Christine
20   Findley, Christina Frye, Toni Gehrman,
     Jeffery Jones, Jonel Landry, Keith Litke,
21   Debora Martin, Traci J. Peters, Elaine
     Seidel, Randall Tryon, and Traci Witt,
22              Defendants.

23          This matter is before the Court on Defendants' motions to dismiss.[1]  Defendants

24   Community Recovery Resources, Inc. ("CORR"), Sierra Council on Alcoholism and Drug

25   _____

26   [1]      After reviewing Defendants' *Ex Parte* Application to Exceed the 20 Page Limit (ECF No. 60), the Court
     granted Defendants CORR, Sierra Council, Ron Abram, Keith Litke, Chuck Coovert, Elaine Bailey, Pauline
     Bowman, Debora Martin, Christina Frye, Christine Findley, Jonel Landry Mullins, Randall Tryon, Kevin M.
     Cassidy, Aaron J. Cleveland, M.D., Traci Witt, Jeffrey Jones, and Warren A. Daniels ("moving Defendants") a total
27   of 30 pages for their brief.  Shortly thereafter, Defendants filed two separate motions to dismiss, moving Defendants
     filed a 29 page motion (ECF No. 77-1) and Defendants Jeremy Ashurst, Doug Carver, Traci J. Peters, Sommer
28   Dobbins, and Toni Gehrman filed a separate 19 page motion (ECF No. 78-1).

                                                     1

Dependence ("Sierra Council"), Ron Abram, Keith Litke, Chuck Coovert, Elaine Bailey, Pauline Bowman, Debora Martin, Christina Frye, Christine Findley, Jonel Landry Mullins, Randall Tryon, Kevin M. Cassidy, Aaron J. Cleveland, M.D., Traci Witt, Jeffrey Jones, and Warren A. Daniels moved to dismiss Plaintiffs' Second Amended Complaint ("SAC") on December 8, 2015.[2] (ECF No. 77.) Defendants Jeremy Ashurst, Doug Carver, Traci J. Peters, Sommer Dobbins, and Toni Gehrman filed a separate motion to dismiss on December 9, 2015. (ECF No. 78.) Plaintiffs opposed Defendants' motions. (ECF Nos. 80 & 81.) The Court has carefully considered the arguments raised by both parties and for the reasons stated below, Defendants' Motions to Dismiss (ECF Nos. 77 & 78) are hereby GRANTED IN PART and DENIED IN PART.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs bring the instant *qui tam* action against Defendants for knowingly submitting false claims in violation of both the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A) and the California False Claims Act ("CFCA"), Cal. Gov. Code § 12651(a)(1); knowingly making a false record to get a false claim approved in violation of both the FCA, 31 U.S.C. § 3729(a)(1)(B) and the CFCA, Cal. Gov. Code § 12651(a)(2); and conspiracy in violation of both the FCA, 31 U.S.C. § 3729(a)(1)(c) and the CFCA, Cal. Gov. Code § 12651(a)(3).[3] (ECF No. 73 at 105−107.) Plaintiffs allege Defendants submitted claims for reimbursement from various government programs in spite of Defendants' noncompliance with the regulations upon which funding was conditioned. (ECF No. 73 at 7.) Specifically, Plaintiffs allege Defendants billed county, state, and federal funding sources for alcohol and other drug ("AOD") treatment services that were: 1) not provided; 2) falsely documented; 3) provided by non-registered or non-certified staff members; or 4) otherwise failed to comply with applicable rules and regulations.

---

[2] Defendants indicate Elaine Bailey and Jonel Landry Mullins were sued erroneously as Elaine Seidel and Jonel Landry.

[3] Plaintiffs point out in their objections that Defendants do not seek dismissal of Counts IV-VI of Plaintiffs' SAC. (ECF No. 80 at 11.) Why Plaintiffs seek to point this out is incomprehensible to the Court. On November 3, 2015, the Court dismissed without prejudice Counts IV-VI of Plaintiffs' First Amended Complaint: Count IV- Payment Under Mistake of Fact, Count V- Negligence, and Count VI- Unjust Enrichment. (ECF No. 71.) Plaintiffs did not reassert these claims in their SAC. As such, the Court will not address these counts, and admonishes Plaintiffs not to argue claims that have been dismissed.

(ECF No. 73 at 5.)  Plaintiffs' allegations center on Defendants' conduct beginning in 1998 and continuing until this action commenced on May 21, 2013.

Defendants CORR and Sierra Council are non-profit organizations that provide AOD services in Nevada, Placer, and Sierra counties.  (ECF No. 73 ¶ 2.)  Sierra Council merged with CORR in January 2011.  (ECF No. 73 ¶ 140.)  The other twenty individually named Defendants are past and present employees, directors, or board members of either CORR or Sierra Council.  (ECF No. 73 at 48–53.)  Plaintiffs worked for CORR or Sierra Council at various times over the period outlined in Plaintiffs' SAC.  (ECF No. 73.)

A.  Program Description[4]

The California Department of Alcohol and Drug Programs ("ADP") certifies whether substance abuse treatment programs comply with California regulations.  (ECF No. 73 ¶ 164.)  ADP receives federal funds from the United States Department of Health and Human Services Substance Abuse and Mental Health Services Administration and allocates these funds to approved counties to combat alcohol and drug use problems.  (ECF No. 73 ¶ 164.)  In addition to the ADP-allocated state funds from Nevada, Placer, and Sierra counties, CORR and Sierra Council receive funding from various other sources including the Center for Medicare and Medicaid and the United States Department of Agriculture.  (ECF No. 73 ¶ 6.)  As government funded treatment providers, CORR and Sierra Council must comply with all applicable regulations and guidelines to maintain licensure and certification and to be reimbursed for their provision of AOD services.  (ECF No. 73 ¶ 165.)

B.  Alleged Violations of Certification and Licensing Requirements

To provide counseling services in an AOD program, a staff member must be licensed, certified, or registered to become certified pursuant to California Code of Regulations Sections 13010(a) and 13035(f) within six months of hire.  (ECF No. 73 ¶ 169.)  Furthermore, any staff conducting intake, assessment of need for services, treatment or recovery planning, or counseling in an ADP-licensed program must be certified.  (ECF No. 73 ¶ 169.)  Title 9 of the California

---

[4]   Due to the length of Plaintiffs' SAC and the level of detail contained therein, the Court will only briefly summarize the relevant background information and factual allegations.

Code of Regulations outlines the requirements for AOD certification.  (ECF No. 73 ¶ 170.)

Plaintiffs allege CORR and Sierra Council routinely directs its employees to provide treatment services beyond the scope of their credentials or without registration or certification.  (ECF No. 73 ¶ 178.)  Plaintiffs allege that although they were neither licensed nor certified at various times during their employment, supervising employees at CORR and Sierra Council instructed them to perform AOD treatment services in violation of Title 9.  (ECF No. 73 ¶¶ 179, 181, 185, 188, 193 197, 201.)

C.  <u>Alleged Violations of Medicare and Medicaid Service Guidelines</u>

The California Medical Assistance program ("Medi-Cal"), California's Medicaid program, provides healthcare services to low-income persons.  (ECF No. 73 ¶ 204.)  While the Department of Health Care Services administers Medi-Cal, California's ADP certifies Drug Medi-Cal ("DMC") treatment providers.  (ECF No. 73 ¶ 205.)  Additionally, ADP oversees reimbursement for AOD treatment services and monitors treatment providers' compliance with Title 9 and 22 of the California Code of Regulations.  (ECF No. 73 ¶ 205.)

Medi-Cal reimbursement to an ADP treatment provider is contingent on the nature of the services rendered.  (ECF No. 73 ¶ 207.)  DMC providers submit a Claim Submission Certification form for each service entitled to reimbursement, on which providers must certify compliance with all eligibility requirements including: admission, treatment plan, counseling, progress notes, minimum provider and beneficiary contact, necessity for continuing services, discharge, and proof of DMC eligibility.  (ECF No. 73 ¶ 208.)  To be payable by Medi-Cal, DMC treatment providers must establish that the provision of treatment services was at a minimum "determined [to be] medically necessary" and "prescribed by a physician."  (ECF No. 73 ¶ 208.)

Plaintiffs allege CORR and Sierra Council billed Medi-Cal for screening, intake, and assessment services performed by non-certified counselors and registrants without supervision.  (ECF No. 73 ¶ 210.)  Plaintiffs allege CORR billed Medi-Cal for AOD services without establishing that such services were medically necessary.  (ECF No. 73 ¶ 222.)  Plaintiffs further allege CORR and Sierra Council directed its counseling staff to falsify treatment plan records and submit fraudulent billing statements to Medi-Cal for treatment planning services.  (ECF No. 73 ¶

230.)  Plaintiffs allege CORR and Sierra Council billed Medi-Cal for falsified one-on-one counseling sessions or directed its staff to bill Medi-Cal based upon falsified records.  (ECF No. 73 ¶ 248.)  Plaintiffs allege CORR billed Medi-Cal based upon falsified group counseling documentation for group counseling services.  (ECF No. 73 ¶ 287.)  Plaintiffs allege CORR billed Medi-Cal for referrals when referrals were not provided or failed to give referrals when required by law.  (ECF No. 73 ¶ 322.)  Finally, Plaintiffs allege CORR billed Medi-Cal for discharge planning and services which were not provided in compliance with DMC guidelines.  (ECF No. 73 ¶ 326.)

D.  Alleged Violations of Residential Licensing Requirements

CORR and Sierra Council operate residential alcohol and drug abuse treatment facilities that provide 24-hour services to persons recovering from substance abuse.  (ECF No. 73 ¶ 332.)  California requires a valid ADP-issued license to operate residential treatment facilities.  (ECF No. 73 ¶ 329.)  To apply for an ADP license, entities seeking to operate residential treatment facilities must comply with state, federal and/or local codes and regulations.  (ECF No. 73 ¶ 329.)

Plaintiffs allege CORR and Sierra Council billed county, state, or federal funding sources for licensed residential treatment and counseling services despite violations of residential licensing requirements.  (ECF No. 73 ¶ 332.)  Plaintiffs allege AOD counselors and registered recovery workers at Sierra Council's South Placer residential facility distributed medication to residents.  (ECF No. 73 ¶ 333.)  Plaintiffs allege South Placer staff failed to supervise residents working in the kitchen.  (ECF No. 73 ¶ 334.)  Plaintiffs further allege CORR obtained its food at local food banks by using residents' food stamps although residents and staff consumed this food collectively.  (ECF No. 73 ¶ 336.)

E.  Alleged Violations of Various State and Federal Funding Requirements

CORR and Sierra Council receive funding from various state and federal sources, including the Substance Abuse Prevention and Treatment ("SAPT") block grant, the U.S. Department of Agriculture ("USDA") Community Facility Direct Loan Program, and Substance Abuse and Crime Prevention Act funding.  (ECF No. 73 at 93–99.)  Each funding source has specific compliance and reimbursement requirements.

Plaintiffs allege CORR and Sierra Council engaged in the routine practice, management, and operation of their AOD residential and out client treatment facilities in violation of state and federal funding requirements. (ECF No. 73 ¶¶ 337, 342, 345, 348, 351, 358.) Plaintiffs allege Defendants violated SAPT block grant guidelines through their noncompliance with and false certification of the registration and/or certification of its counselors as well as its violations of DMC guidelines in its Mothers in Recovery, Out Client, and Juvenile/Adolescent programs. (ECF No. 73 ¶ 341.) Plaintiffs allege Defendants violated USDA loan guidelines through their noncompliance and false certification of the registration and/or certification of its counselors and violated DMC guidelines in its Out Client program. (ECF No. 73 ¶ 344.) Plaintiffs further allege CORR fraudulently billed Nevada County for counseling services through Nevada County's Deferred Entry of Judgment Program for services provided by non-certified counseling professionals without supervision and for substantive AOD counseling. (ECF No. 73 ¶ 353.)

## II.  STANDARD OF LAW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Federal Rule of Civil Procedure 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

## III.  ANALYSIS

Plaintiffs allege numerous violations of the federal and state false claims acts.[5]  The Federal False Claims Act ("FCA") allows individuals to bring a false claims action on behalf of the government to prevent fraud against the public treasury resulting in monetary loss.  *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968).  A so-called *qui tam* action may be brought against anyone who: 1) knowingly presents, or causes to be presented, to the government a false or fraudulent claim for payment or approval; 2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government; or 3) conspires to defraud the government by getting a false or fraudulent claim allowed or paid.  31 U.S.C. § 3729(a)(1)–(3).

A civil action for FCA liability requires: 1) a false and fraudulent claim; 2) which was presented or caused to be presented to the government for payment; 3) with knowledge that the claim was false.  *United States v. Mackby*, 261 F.3d 821, 826 (9th Cir. 2001).  "Evidence of an actual false claim is the *sine qua non* of a False Claims Act violation."  *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002).  A claim, for purposes

---

[5]  The California False Claims Act ("CFCA"), Cal. Gov. Code §12650-12656, mirrors its federal counterpart. Where the wording is the same, courts rely on federal decisions as persuasive authority in interpreting both the state and federal provisions. *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1021 (9th Cir. 2006).  Regarding the claims at issue in Plaintiffs' SAC, the relevant language in the CFCA and the FCA is materially identical.

8

of the FCA, covers both direct requests to the government for payment as well as reimbursement requests made to the recipients of funding under government benefits programs. *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996 (2016).

In a quintessential FCA action, "the claim for payment is itself literally false or fraudulent." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006). The FCA, however, incorporates false certification theories of liability as well. Express false certification occurs within the meaning of the FCA when an entity seeking payment certifies compliance with a law, rule, or regulation as part of the process through which the claim for payment is submitted. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). Alternately, under the implied certification theory, a knowing failure to disclose a defendant's violation of a material funding requirement may render a claim for payment false or fraudulent and thus actionable under the FCA. *See Universal Health Servs., Inc.* 136 S. Ct. at 1995.

Like all allegations of fraud brought in federal court, FCA claims must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). Further, "'[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false.'" *Id.* (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).

A. Claims Against Defendants Ashurst, Carver, Abram, Coovert, Litke, Bowman, Martin, Finley, Seidel

Defendants contend Plaintiffs fail to allege actionable wrongdoing on the part of Defendants Abram, Coovert, Litke, Bowman, Martin, Finley, and Seidel (ECF No. 77-1 at 22–27), and Defendants Ashurst and Carver. (ECF No. 78-1 at 14.) Indeed, Plaintiffs provide no factual allegations as to these Defendants beyond descriptions of their respective roles as past or current board members or officers of Defendants CORR and Sierra Council. (ECF No. 73.) In

their objections, Plaintiffs concede that dismissal is appropriate as to these individuals, but remain concerned that the United States may object to the dismissal. (ECF Nos. 80 at 12; 81 at 7.) Defendants assert the named Defendants should be dismissed with prejudice because Plaintiffs have been unable to provide any facts in their SAC upon which individual liability can be based. (ECF Nos. 83 at 2–3; 84 at 2–3.)

As discovery has not yet occurred, Plaintiffs seek leave to amend without prejudice. (ECF Nos. 80 at 12; 81 at 7.) Federal Rule of Civil Procedure 16 counsels that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 16. The Court observes that discovery may shed light on actionable conduct by the aforementioned Defendants and finds that justice would best be served by allowing Plaintiffs the opportunity to conduct discovery as to these Defendants. Therefore, all claims against Defendants Ashurst, Carver, Abrams, Coovert, Litke, Bowman, Findley, and Seidel are DISMISSED without prejudice.

Additionally, Plaintiffs seek leave to amend the complaint to present facts regarding Defendant Martin. (ECF No. 80 at 12–13.) Plaintiffs assert they can provide information from Plaintiff Miller to demonstrate Defendant Martin knowingly participated in the allowance of false billing. (ECF No. 80 at 13.) Plaintiffs seek leave to amend the complaint to include that on July 3, 2008 Plaintiff Miller contacted Defendant Martin regarding counseling two sessions at the same time. (ECF No. 80 at 13.) Plaintiffs assert that Defendant Martin supported the decision, accused Miller of talking inappropriately to her supervisor, and demanded Miller's resignation. (ECF No. 80 at 13.) In light of these new facts, the Court finds that justice requires granting leave to amend as to Defendant Martin. Accordingly, all claims against Defendant Martin are DISMISSED without prejudice.

B. Claims Against Defendants Cassidy, Landry, and Dr. Cleveland

Defendants assert Plaintiffs fail to plead facts against Defendants Cassidy, Landry, and Dr. Cleveland upon which relief may be granted. (ECF No. 77-1 at 36.) Plaintiffs identify multiple paragraphs in the SAC containing allegations against these Defendants and argue that they establish FCA claims when the SAC is read in its entirety. (ECF No. 80 at 23–26.) Defendants counter that none of the allegations Plaintiffs point to describe any fraudulent

statement or claim and they fail to allege how the conduct of these individuals violated material conditions of government funding.  (ECF No. 84 at 7.)

### i.     *Defendant Cassidy*

Starting in 2011, Defendant Cassidy worked as the manager of CORR's Roseville and Lincoln DUI programs.  (ECF No. 73 ¶ 145.)  Plaintiffs allege that from October 2010 to January 2012, Defendant Cassidy directed Plaintiff Garcia to indicate on client records that Garcia had conducted both a DUI educational session and out client counseling when she had only performed the out client counseling.  (ECF No. 73 ¶ 79.)  Plaintiffs further allege during 2010 Defendant Cassidy instructed interns without proper registration or certification credentials to facilitate various counseling sessions.  (ECF No. 73 ¶ 203.)

At this stage in the proceeding, Plaintiffs' allegations can be read to suggest that Defendant Cassidy knowingly assisted in causing a false claim to be submitted to the government. The records concerning Garcia's DUI sessions are fraudulent under the FCA as they reflect services not performed or services performed without the requisite level of supervision in violation of the DUI Program's staffing requirements as set forth in the California Code of Regulations.  *See* 9 C.C.R. § 9846 ("The instructor must be present during the entire educational session.")  Likewise, any claims submitted to funding sources reflecting the counseling sessions administered by non-certified or non-registered interns violate ADP certification requirements. *See* 9 C.C.R. §§ 13000–13055.  Although it is unclear whether Defendants billed for the provision of these services specifically, Plaintiffs must simply allege enough facts to create a reasonable expectation that discovery will reveal evidence of the submitted claims.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); Fed. R. Civ. P. 9(b).  In specifying the particular circumstances — the who, what, where, and when — of the fraudulent statements, Plaintiffs provide enough detail to meet this burden.

Moreover, contrary to Defendants' suggestion, it is immaterial that Defendant Cassidy did not personally submit the fraudulent claims.  (ECF No. 77-1 at 36.)  "The FCA reaches any person who knowingly *assisted in* causing the government to pay claims which were grounded in fraud . . . [t]hus, a person need not be the one who actually submitted the claim forms in order to

11

be liable . . . ." *Mackby*, 261 F.3d at 827 (internal citations omitted). Taking Plaintiffs' factual allegations as true, Defendant Cassidy instructed others to falsify records later submitted for DMC reimbursement as well as directed others to perform beyond the scope of their certification or registration in violation of staffing requirements.

Accordingly, this Court DENIES Defendants' Motion to Dismiss claims against Defendant Cassidy.

ii.        *Defendant Landry*

Defendant Landry served as an administrative employee for CORR in 2011. (ECF No. 73 ¶ 154.) In this capacity, Defendant Landry conducted utilization review compliance of CORR's records to ensure compliance with billing and case management requirements. (ECF No. 73 at 92.) Plaintiffs allege in March 2011 Landry instructed Plaintiff Frazier to fill out progress notes for one-one-counseling sessions provided by Licensed Medical and Family Therapist ("LMFT"), Bonnie Hampton. (ECF No. 73 ¶ 301.)

Although Defendants contend Plaintiffs fail to identify how Defendant Landry's conduct "violated a law or regulation material to the receipt of government funding," the Court is unpersuaded. (ECF No. 84 at 7.) For a provider to be eligible for reimbursement for DMC substance abuse services, the therapist or counselor who provided the session must record a progress note for each beneficiary who participated, providing both their signature and the date of the note within seven days of the session. *See* 22 C.C.R. § 51341.1(h)(3)(A). Progress notes serve as an integral part of a beneficiary's patient record, aiding physicians in their determination of whether continuance of services is medically necessary pursuant to state law. *See* 22 C.C.R. §§ 51341.1(g)(1)(B), (h)(5)(A)(ii). In light of DMC documentation requirements, Plaintiffs have alleged sufficient facts to suggest that Defendant Landry instructed Plaintiff Frazier to falsify progress notes in order to be eligible for DMC reimbursement for LMPT Hampton's sessions, thereby knowingly assisting in the creation of a false record to get a false claim approved in violation of the FCA.

Accordingly, this Court DENIES Defendants' Motion to Dismiss claims against Defendant Landry.

*iii.*        *Defendant Dr. Cleveland*

2          Defendant Dr. Cleveland has served as CORR's Medical Director since 2008.  (ECF No.

3    73 ¶ 146.)  As a California licensed physician, Dr. Cleveland is responsible for overseeing

4    beneficiary intake pursuant to DMC regulations as well as signing treatment plans and treatment

5    continuances in accordance with Medi-Cal timelines.  (ECF No. 73 ¶¶ 29, 209.)  In the SAC,

6    Plaintiffs allege they observed Dr. Cleveland engage in a consistent practice of not meeting with

7    clients.  (ECF No. 73 ¶ 223.)  Plaintiffs allege in March 2010 Dr. Cleveland completed review of

8    large numbers of client records quickly and signed waivers of physical examinations on all client

9    files.  (ECF No. 73 ¶ 223.)

10         The crux of Plaintiffs' FCA claim against Dr. Cleveland is his alleged failure to

11   adequately determine the medical necessity of AOD treatment to beneficiaries in violation of

12   DMC reimbursement requirements.  However, Plaintiffs allege no facts connecting Dr. Cleveland

13   to a specific fraudulent claim as required by Federal Rule of Civil Procedure 9(b).  Dr.

14   Cleveland's conduct, specifically the speed of his file review and his apparent unwillingness to

15   meet with clients, does not relate to a literally fraudulent claim, nor does it suggest false

16   certification of compliance with DMC reimbursement requirements.  Furthermore, Plaintiffs

17   allege no facts to suggest that Dr. Cleveland directed the provision of medically unnecessary

18   services.  As such, Plaintiffs have not established a basis for FCA liability for Dr. Cleveland.

19         For these reasons, all claims against Defendant Dr. Cleveland are DISMISSED without

20   prejudice.

21         C.  Failure to Comply with the Statute of Limitations

22         Defendants assert the applicable statute of limitations bars several claims in Plaintiffs'

23   SAC.  (ECF Nos. 77-1 at 13; 78-1 at 10.)  Defendants move to strike paragraphs of the SAC

24   which specifically allege fraudulent conduct before May 21, 2003, and seek an order from the

25   Court declaring that all federal and state claims centered on this conduct are barred.  (ECF Nos.

26   77-1 at 11; 78-1 at 14.)  Plaintiffs observe a motion to strike pursuant to Federal Rule of Civil

27   Procedure 12(f) is the proper mechanism by which to seek to strike allegations from the

28   complaint.  (ECF Nos. 80 at 14; 81 at 11.)  In their replies, Defendants request that the Court

"apply 12(f) to strike or dismiss those paragraphs of the SAC which are immaterial." (ECF Nos. 83 at 6; 84 at 6.)

Per Defendants' request, the Court construes Defendants' motions to "dismiss" paragraphs as Rule 12(f) motions to strike. Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Rule 12(f) motions are, however, "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Accordingly, a "motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Bassett v. Ruggles et al.*, No. CV–F–09–528 OWW/SMS, 2009 WL 2982895, at *24 (E.D. Cal. Sept. 14, 2009) (internal citations omitted). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of New York Mellon*, No. 12–00846, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

A court may strike from the pleadings any redundant, immaterial, impertinent, or scandalous matter. *Yursik v. Inland Crop Dusters Inc.*, No. CV-F-11-01602-LJO, 2011 WL 5592888, at *2 (E.D. Cal. Nov. 16, 2011). A court will only consider striking a defense or allegation if it fits within one of these four categories. *Id.* "Allegations supplying background or historical material or other matter of evidentiary nature will not be stricken unless unduly prejudicial to defendant." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal 1992).

Defendants seek to "dismiss" 27 paragraphs from Plaintiffs' SAC on the basis of immateriality.[6] A matter is immaterial for purposes of a motion to strike if it has "no essential or

---

[6]    Defendants specifically seek to dismiss paragraphs: 1, 10–12, 13–14, 20–22, 110–111, 178–180, 185–187,

important relationship to the claim for relief or the defenses being pleaded." Fed. R. Civ. P. 12(f). The paragraphs enumerated by Defendants, however, contain information pertinent to Plaintiffs' FCA and CFCA claims. To illustrate, in paragraph 21 of the SAC, Plaintiffs allege they falsified the number of participants in group counseling sessions at the direction of Defendants Jones and Daniels to meet DMC billing requirements. (ECF No. 73 ¶ 21.) Taking these allegations as true, this paragraph supports a finding that Defendants knowingly caused a fraudulent claim to be made for purposes of government payment.

Defendants argue these paragraphs are immaterial because they are precluded as a matter of law — that is, they describe events occurring outside the ten or six year statute of limitations of FCA and CFCA claims. (ECF No. 77-1 at 5–7; 78-1 at 3–5.) The Court finds Defendants' attempt to strike allegations from Plaintiffs' SAC, albeit styled as a Rule 12(f) motion, an attempt to have portions of the complaint dismissed as legally insufficient. "Rule 12(f) is 'neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint.'" *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977). Rule 12(b)(6) already serves such a purpose. *See Whittlestone, Inc.*, 618 F.3d at 974 ("Were we to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading . . . we would be creating redundancies within the Federal Rules of Civil Procedure"). As Defendants have not demonstrated proper grounds for striking portions of Plaintiffs' SAC, Defendants' request to "dismiss" paragraphs as barred by the applicable statute of limitations is hereby DENIED.

D. Plaintiffs' FCA Conspiracy Claim Is Barred by the Intracorporate Conspiracy Doctrine

Plaintiffs' third claim for relief asserts a conspiracy to violate the FCA in violation of 31 U.S.C. § 3729(a)(1)(c) and the CFCA, Cal. Gov. Code § 12651(a)(3). (ECF No. 73 at 105–106.) Defendants assert Plaintiffs cannot maintain the conspiracy claim because the Intracorporate Conspiracy Doctrine ("ICD") prevents corporations and their employees from conspiring together. (ECF No. 77-1 at 8–9.) Plaintiffs argue the ICD does not apply to FCA conspiracy claims because the FCA is directed toward preventing proscribed conduct of employees and

---

211–212, 216, 249, 255–258, 333–334, and 374 of the SAC. (ECF Nos. 77-1 at 5–7; 78-1 at 3–5.)

officers of the same corporation.  (ECF No. 81 at 14.)  Defendants contend Plaintiffs ignore

recent cases finding that the ICD does apply in the FCA context.  (ECF No. 83 at 6.)

The ICD provides that "as a matter of law, a corporation cannot conspire with its own

employees or agents."  *Hoefer v. Fluor Daniel, Inc.*, 92 F. Supp. 2d 1055, 1057 (C.D. Cal. 2000).

This is because, as a practical matter, the actions of employees performing within the scope of

their employment are imputed to the corporate entity.  "A conspiracy requires a meeting of the

minds," and thus, the ICD recognizes that there must exist two distinct persons or entities to form

a conspiracy.  *U.S. ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1038 (C.D. Cal. 2012).

The Ninth Circuit has yet to rule on the applicability of the ICD to a conspiracy alleged

under the FCA.  However, other district courts in this Circuit have applied the ICD in FCA cases.

*See United States v. IASIS Healthcare LLC*, No. CV-15-00872-PHX-JJT, 2016 WL 6610675, at

*16 (D. Ariz. Nov. 9, 2016) (finding the ICD to bar conspiracy claim between parent company

and subsidiary entities); *United States ex rel. Campie v. Gilead sciences, Inc.*, No. C–11–0941

EMC, 2015 WL 106255, at *15 (N.D. Cal. 2015) (finding the ICD to bar conspiracy claim

between parent corporation and a wholly-owned subsidiary); *Masimo Corp.*, 929 F. Supp. 2d at

1038 (finding the ICD to bar conspiracy claim between corporation and management personnel);

and *U.S. v. Summit Healthcare Ass'n, Inc.*, No. CV–10–8003–PCT–FJM, 2011 WL 814898, at *6

(D. Ariz. 2011) (finding the ICD to bar conspiracy claim between corporation and Chief Financial

Officer).

Plaintiffs point to no authority that suggests the ICD is inapplicable to FCA claims.

Instead, Plaintiffs assert *Webster v. Omnitrition Intern., Inc.*, 79 F.3d 776, 787 (9th Cir. 1996),

requires an analysis of the nature and purpose of the statute at issue.  (ECF Nos. 80 at 19; 81 at

14.)  Plaintiffs argue that there is no basis for extending the ICD to FCA claims when considering

the purpose of the FCA as required by *Webster*.  (ECF No. 80 at 19–20; 81 at 13–14.)  However,

the only conceivable victim of an FCA conspiracy is the government, which has the power to

criminally prosecute corporations and their employees where there is a basis for such allegations.

*See Summit Healthcare Ass'n, Inc.*, 2011 WL 814898 at *7.  Accordingly, to the extent that

application of the ICD to the FCA conspiracy claims does not immunize all conspiracies from

redress where defendants are coincidentally employees of the same corporation, the ICD appears consistent with the ultimate aim of the FCA. Regardless, the Court finds Plaintiffs' reliance on *Webster* is misplaced, as the Ninth Circuit has only applied the *Webster* analysis in the RICO context. *See Neibel v. Trans world Assur. Co.*, 108 F.3d 1123, 1129 (9th Cir. 1997). At this time, the Court is not inclined to extend the analysis so broadly as to cover FCA claims.

Thus, Plaintiffs' conspiracy claim fails to state a claim because it does not adequately allege the existence of a conspiracy. "A corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." *Hoefer*, 92 F. Supp. 2d at 1057 (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)). Absent any facts expressly connecting CORR or Sierra Council to non-employees as part of the alleged fraud, Plaintiffs' third claim of Conspiracy to Commit a Violation of the FCA and CFCA is DISMISSED without prejudice.

E. Failure to Plead with Particularity Claims I and II

Defendants contend Plaintiffs' SAC generally alleges regulatory violations but fails to meet Rule 9(b)'s heightened pleading standard. (ECF Nos. 77-1 at 22; 78-1 at 18.) Defendants assert Plaintiffs fail to describe how Defendants' alleged conduct amounts to a violation of a law or regulation, was material to receiving a payment from a government entity, or was knowingly fraudulent. (ECF No. 77-1 at 22.) Furthermore, Defendants assert Plaintiffs fail to specify the program in which services were provided. (ECF No. 77-1 at 22.) Defendants move to dismiss all claims which allege some type of mismanagement but do not represent material violations of the FCA or the CFCA. (ECF Nos. 77-1 at 11; 78- at 18.) Specifically, Defendants assert Plaintiffs fail to allege "essential elements of liability" regarding: 1) clients for whom services may have been billed to a government payor or who had private insurance; 2) various medical necessity allegations; 3) allegations that defendant staff acted outside the scope of their authority; 4) screening allegations; 5) crisis allegations; 6) collection of urine sample allegations; 7) allegations of non-compliance with residential licensing requirements; and 8) referral allegations. (ECF Nos. 77-1 at 22–28; 78-1 at 17–20.) Plaintiffs assert these allegations provide background information and need not constitute a claim for relief by themselves. (ECF Nos. 80 at 17; 81 at 17–18.)

i.    *Government Billing Allegations*

Defendants assert Plaintiffs fail to allege essential elements of liability regarding clients for whom services may have been billed to the government or who had private insurance.  (ECF No. 77-1 at 22, 78-1 at 18.)  In short, Defendants contend Plaintiffs fail to allege that certain alleged false claims were actually submitted to the government.[7]  (ECF Nos. 77-1 at 22; 78-1 at 19.)  Further, Defendants question the relevancy of claims which Plaintiffs identified to have been billed to private insurance.  (ECF No. 77-1 at 22, 78-1 at 19.)

While Rule 9(b) does not require Plaintiffs to allege all facts supporting each and every instance of fraudulent billing over a multi-year period, Plaintiffs must provide a reasonable basis to infer that false claims were actually submitted.  *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).  Thus, although the focus of the FCA centers on false claims, the Ninth Circuit does not mandate plaintiffs to identify "representative examples of false claims at the pleading stage."  *United States ex rel. Huey v. Summit Healthcare Ass'n, Inc.*, 2011 WL 814898, at *4 (D. Ariz. March 3, 2011) (citing *Ebeib*, 616 F.3d at 998–99).  "Instead, it is sufficient to allege particular details of a scheme to submit false claims paired with *reliable indicia* that lead to a strong inference that claims were actually submitted."  *Id.* (emphasis added) (internal citations omitted).  In essence, plaintiffs need not submit direct evidence of actual false claims but must nevertheless link a scheme of fraudulent billing to the likelihood that the defendant submitted false claims.

Under the Ninth's Circuit's relaxed standard, Plaintiffs' SAC sufficiently alleges false claims were actually submitted to the government.  In several instances Plaintiffs assert Defendants engaged in fraudulent behavior for the very purpose of ensuring eligibility for reimbursement by the government.  (ECF No. 73 ¶¶ 11, 16, 21, 22, 30, 55, 216, 288, 289.)  Coupled with Plaintiffs' detailed description of the dates, participants, and nature of Defendants' alleged fraudulent conduct, it appears illogical to the Court that Defendants would undergo such extensive efforts to comply with funding requirements only to not submit claims for

---

[7]     Defendants enumerate two paragraphs in the SAC, 255 and 307, as failing to allege that the false claims were in fact submitted to the government.  (ECF Nos.77-1 at 22; 78-1 at 19.)

18

reimbursement.  Moreover, Plaintiffs adequately provide reliable indicia that the alleged

fraudulent behavior conducted over a multiyear period resulted in fraudulent claims being paid by

the government.  (ECF No. 73-3.)  Plaintiffs provide copies of CORR and Sierra Council's tax

filings for fiscal years 2002 to 2009, detailing government funding in excess of 25 million dollars.

(ECF No. 73-3 at 139–468.)  Thus, at this stage in the proceeding, Plaintiffs have "provide[d]

enough detail to give [defendants] notice of the particular misconduct which is alleged to

constitute the fraud charged so that [they] can defend against the charge and not just deny that

[they have] done anything wrong."  *Ebeib*, 616 F.3d at 999.

### ii.   *Medical Necessity Allegations*

Defendants assert Plaintiffs' allegations regarding Defendants' alleged fraudulent billing

for medically unnecessary services do not meet Rule 9(b) pleading requirements.  (ECF No. 77-1

at 22.)  Defendants contend Plaintiffs fail to plead with specificity how Defendants' conduct,

particularly that of Dr. Cleveland, violated the medical necessity provision of DMC funding

guidelines.  (ECF No. 77-1 at 22.)  Plaintiffs respond that Dr. Cleveland, the physician who was

primarily responsible for ensuring that all claims submitted for DMC reimbursement were

medically necessary, failed to meet with clients or review client files adequately.  (ECF No. 80 at

25–26.)

As the Court previously indicated, Plaintiffs' allegations regarding Dr. Cleveland do not

give rise to FCA liability.  While DMC reimbursement guidelines require physicians to determine

whether the provision of AOD services is medically necessary, there exists no corresponding

requirement to expend a certain amount of time on case review or to physically examine every

client in determining medical necessity.  *See* 22 C.C.R. § 51341.1.  Plaintiffs provide no other

allegations to form the basis of a FCA claim as it relates to medical necessity.  (ECF No. 73.)

Accordingly, to the extent that Plaintiffs' claims rely on the alleged conduct of Dr. Cleveland,

these claims are DISMISSED without prejudice.

### iii.   *Scope of Authority Allegations*

Defendants assert Plaintiffs' allegations focused "on the idea that defendant staff

performed actions outside the scope of their authority" fail to state a claim upon which relief may

be granted. (ECF No. 77-1 at 23.) Specifically, Defendants argue Plaintiffs fail to allege how the receptionists' conduct violated a regulation material to the receipt of government funding. (ECF No. 77-1 at 23.) Defendants further contend several of Plaintiffs' allegations do not support the proposition that CORR and Sierra Council billed Medi-Cal for screening, intake, and assessment services performed by non-certified counselors and registrants without supervision. (ECF No. 77-1 at 24.) Finally, Defendants assert that Plaintiffs' allegations that non-registered interns conducted counseling sessions prior to 2005 fail to allege a violation of any regulation as it was not until 2005 that staff providing AOD counseling services were required to be registered. (ECF No. 77-1 at 25.) Plaintiffs counter that Defendants' request to dismiss portions of certain causes of action of the SAC is improper and cannot be granted by way of a Rule 12(b)(6) motion. (ECF Nos. 80 at 10–12; 81 at 16–19.)

Defendants appear to be requesting that the Court strike all allegations that do not provide direct support for Claim I or Claim II of Plaintiffs' SAC. Not every statement in a complaint must give rise to liability. Although Federal Rule of Civil Procedure 8 requires a short and plain statement of the claim, "Rule 8 does not prohibit a party from providing a reasonably detailed description of the facts involved, nor does it prohibit a party from providing the context and history from which the alleged claims arise." *Nelson v. Long Lines Ltd.*, No. C02-4083-MWB, 2003 WL 21356081, at *2 (N.D. Iowa 2003). Moreover, plaintiffs alleging fraud must plead the circumstances of the fraudulent acts that form the basis of their FCA claims with sufficient specificity pursuant to Rule 9(b). Fed. R. Civ. P. 9(b).

Specific allegations may be stricken from a pleading only insofar as they constitute "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Where allegations, when read with the complaint as a whole, give a full understanding thereof, they need not be stricken." *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal 1992). Moreover, "allegations supplying background or historical material . . . will not be stricken unless unduly prejudicial to defendant." *LeDuc*, 814 F. Supp. at 830. Here, Plaintiffs' allegations support their contention that Defendants violated certification and licensing requirements for staffing at ADP-licensed facilities. "Any individual providing intake, assessment of need for

services, treatment or recovery planning, individual or group counseling to participants, patients or residents in an ADP licensed or certified program is required to be certified . . ." (ECF No. 73 ¶ 169.) In the SAC, Plaintiffs allege Defendants instructed Plaintiff Garcia, a non-registered and non-certified employee, to conduct intake and assessment on residents for a number of months. (ECF No. 73 ¶¶ 214, 215.) Similarly, Plaintiffs allege Defendants directed Plaintiff Graham, a non-certified, registered student worker, to conduct assessments. (ECF No. 73 ¶ 216.) These allegations suggest that CORR and Sierra Council were falsifying compliance with ADP staffing requirements.

Thus, with regard to the "scope of authority" allegations identified by Defendants, these allegations provide background information relevant to Plaintiffs' FCA and CFCA claims and may support a determination that Defendants knowingly contributed to submitting fraudulent claims. Defendants have not put forth any appropriate basis for dismissing specific allegations from Plaintiffs' SAC nor have Defendants alleged any prejudice suffered by way of Plaintiffs' allegations. As such, the Court declines to "dismiss" these allegations at this time.

*iv.      Screening Allegations*

Defendants assert Plaintiffs fail to indicate how the allegations contained in the "Screening" section of the SAC involve false claims. (ECF No. 77-1 at 26.) Defendants contend that the only applicable regulation, 22 C.C.R. § 51241.1, outlines no requirements for beneficiary screening. (ECF No. 77-1 at 26.) Defendants point out that it is not clear whether any services provided to prospective clients were ultimately claims submitted to government funding sources. (ECF No. 77-1 at 26.) Plaintiffs counter that Defendants' request to dismiss portions of certain causes of action of the SAC is improper and cannot be granted by way of a Rule 12(b)(6) motion. (ECF Nos. 80 at 10–12; 81 at 16–19.)

Defendants correctly identify that 22 C.C.R. § 51241.1 does not contain the term "screening" whatsoever. Nevertheless, Defendants have not demonstrated that Plaintiffs' allegations concerning beneficiary screening warrant the granting of a Rule 12(f) motion to strike. As previously discussed, the Court is not inclined to dismiss specific allegations from the SAC without a proper basis for doing so.

*v.     Crisis Allegations*

Defendants assert Plaintiffs' allegations regarding Defendants' instructions as to what to bill to DMC as a "crisis" amount to a difference of opinion, not an FCA violation. (ECF No. 77-1 at 27.) Defendants argue disagreement as to the definition of imminence for DMC billing purposes does not rise to the level of knowing fraud as required by the FCA. (ECF No. 77-1 at 27.) Furthermore, Defendants assert Plaintiffs' allegations regarding Defendants alleged failure to comply with residential licensing requirements do not give rise to a viable action for false claims. (ECF No. 77-1 at 28.) Defendants argue mathematical error cannot constitute knowing fraud. (ECF No. 77-1 at 28.) Plaintiffs counter that Defendants' request to dismiss portions of certain causes of action of the SAC is improper and cannot be granted by way of a Rule 12(b)(6) motion. (ECF Nos. 80 at 10–12; 81 at 16–19.)

The FCA defines "knowing" and "knowingly" to mean that, with respect to information, a person: 1) "has actual knowledge of the information"; 2) "acts in deliberate ignorance of the truth or falsity of the information"; or 3) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). "[N]o proof of specific intent to defraud is required." *Id.* Instead, "the requisite intent is the knowing presentation of what is known to be false." *U.S. ex rel. Anderson v. N. Telecomm., Inc.*, 52 F.3d 810, 815 (9th Cir. 1995). Under the FCA's scienter requirement, "innocent mistakes, mere negligent misrepresentations and differences in interpretations" will not suffice to create liability. *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011). However, under Rule 9(b) "malice, intent, knowledge, and other conditions of a person's mind," including scienter, can be alleged generally. *See* Fed. R. Civ. P. 9(b).

While Plaintiffs' crisis and residential licensing requirement allegations may not plead the requisite scienter by themselves, Plaintiffs repeatedly argue Defendants certified compliance with funding requirements even though they were not in compliance. For example, Plaintiffs argue Defendants failed to provide AOD services as claimed, falsified client records, and violated staffing requirements. In several instances Plaintiffs assert Defendants engaged in fraudulent behavior for the very purpose of ensuring eligibility for reimbursement by the government. (ECF

No. 73 ¶¶ 11, 16, 21, 22, 30, 55, 216, 288, 289.)  Moreover, Plaintiffs allege those Defendants who were ultimately responsible for proper billing directed employees to falsify chart notes and to add inaccurate billing codes, as well as instructed unqualified employees to perform counseling beyond the scope of their training.  (ECF No. 81 at 8–9.)  Accordingly, the Court finds that knowing fraud may be properly inferred from Plaintiffs' SAC for purposes of their FCA and CFCA claims.

      *vi.*    *Urine Sample Allegations*

      Defendants assert Plaintiffs' allegations regarding the collection of urine samples have no connection to false claims submitted to the government.  (ECF No. 77-1 at 27.)  Defendants request that the Court strike all allegations regarding urine samples without leave to amend.  (ECF No. 77-1 at 28.)  Plaintiffs counter that Defendants' request to dismiss portions of certain causes of action of the SAC is improper and cannot be granted by way of a Rule 12(b)(6) motion.  (ECF Nos. 80 at 10–12; 81 at 16–19.)

      Defendants suggest Plaintiffs have not sufficiently alleged fraud in relation to their urine collection allegations.  To the extent that Defendants seek dismissal of all related allegations, Defendants have not demonstrated that these allegations amount to material appropriately stricken under Rule 12(f).  As previously discussed, the Court is not inclined to dismiss specific allegations from the SAC without a proper basis for doing so.

      *vii.*    *Allegations Regarding Residential Licensing Requirements*

      Defendants assert Plaintiffs' allegations regarding residential licensing requirements do not give rise to a viable action for false claims.  (ECF No. 77-1 at 28.)  Defendants argue mere regulatory violations do not constitute FCA violations.  (ECF No. 77-1 at 28.)  Defendants further argue mistakes in calculating the amount of residents or food do not establish the requisite scienter.  (ECF No. 77-1 at 28.)  Plaintiffs counter that Defendants' request to dismiss portions of certain causes of action of the SAC is improper and cannot be granted by way of a Rule 12(b)(6) motion.  (ECF Nos. 80 at 10–12; 81 at 16–19.)

      Defendants do not specify what type of relief they seek in relation to Plaintiffs' residential licensing allegations.  (ECF No. 77-1 at 28.)  Based upon the organization of Defendants' moving

papers, the Court interprets Defendants' argument as seeking the dismissal of all allegations in the SAC which relate to residential licensing requirements. Defendants have not demonstrated that these allegations amount to material appropriately stricken under Rule 12(f). As previously discussed, the Court is not inclined to dismiss specific allegations from the SAC without a proper basis for doing so.

    *viii.*  *Referral Allegations*

    Defendants assert Plaintiffs' allegations regarding referrals do not constitute presentment of a knowingly fraudulent claim or false certification of compliance. (ECF No. 77-1 at 29.) Defendants request that the Court strike all allegations regarding referrals. (ECF No. 77-1 at 28–29.) Plaintiffs counter that Defendants' request to dismiss portions of certain causes of action of the SAC is improper and cannot be granted by way of a Rule 12(b)(6) motion. (ECF Nos. 80 at 10–12; 81 at 16–19.)

    Plaintiffs' referral allegations may provide background information relevant to Plaintiffs' false certification of compliance claim. Defendants have not demonstrated that these allegations amount to material appropriately stricken under Rule 12(f). As previously discussed, the Court is not inclined to dismiss specific allegations from the SAC without a proper basis for doing so.

    F. <u>Driving Under the Influence Program, Deferred Entry of Judgment/Penal Code 1000 Program, Drug Court Program, Substance Abuse and Crime Prevention Act of 2000, U.S. Department of Agriculture Community Facility Direct Loan Program; Clients A-U, I</u>

    Defendants assert Plaintiffs make vague and broad references to the Driving Under the Influence Program, the Deferred Entry of Judgment/Penal Code 1000 Program, the Drug Court Program, the Substance Abuse and Crime Prevention Act of 2000, and the U.S. Department of Agriculture Facility Direct Loan Program. (ECF Nos. 77-1 at 18; 78-1 at 15.) Defendants contend Plaintiffs fail to allege what claims were submitted in connection with these programs or when such claims were made. (ECF Nos. 77-1 at 18; 78-1 at 15.) Defendants assert Plaintiffs' sweeping language does not comply with Rule 9(b)'s pleading requirements. (ECF Nos. 77-1 at 21; 78-1 at 15–16.) Defendants advise "these paragraphs should be stricken from the SAC and relators should not be allowed to make any liability contentions in connection with such

programs." (ECF Nos. 77-1 at 21; 78-1 at 18.)  Plaintiffs counter that Defendants appear to be improperly seeking dismissal of specific allegations relating to certain government programs, but do not seek dismissal of any count of the SAC per se.  (ECF No. 81 at 17.)

Similarly, Defendants assert Plaintiffs' allegations regarding Client A, Client B, Client C, Client D, Client E, Client F, Client G, Client H, Client I, and Client U fail to allege the four prima facie elements of a FCA claim.  (ECF Nos. 77-1 at 29; 78-1 at 20.)  Defendants seek dismissal of specific enumerated paragraphs as Defendants contend no facts have been alleged regarding these clients upon which relief may be granted.  (ECF Nos. 77-1 at 30; 78-1 at 20.)  Plaintiffs respond that even if allegations regarding Clients A–I and U are insufficient by themselves to support an FCA claim, this would not be a proper ground upon which to dismiss an entire claim.  (ECF No. 81 at 17.)

Once again, Defendants appear to be requesting that the Court strike numerous allegations from the SAC because they do not directly support Claim I or Claim II of the SAC.  This is not a proper basis for a Rule 12(f) motion to strike.  Defendants have not put forth an appropriate basis for dismissing specific paragraphs from Plaintiffs' SAC.

G. <u>Defendants Daniels, Dobbins, Frye, Gehrman, Jones, Peters, Tryon, Witt</u>

Defendants assert paragraphs concerning Defendants Warren Daniels, Sommer Dobbins, Christina Frye, Toni Gehrman, Jeffrey Jones, Traci Peters, Randall Tryon and Traci Witt do not properly allege essential elements of a FCA claim against these Defendants individually.  (ECF Nos. 77-1 at 37; 78-1 at 25.)  Defendants contend Plaintiffs fail to plead any facts that demonstrate how the named individuals submitted a fraudulent claim to the government or how their alleged conduct violated a law or regulation material to the receipt of government funding.  (ECF Nos. 77-1 at 38; 78-1 at 26.)  Defendants seek dismissal of over two hundred paragraphs in the SAC on this basis.  (ECF Nos. 77-1 at 38; 78-1 at 26.)  In their replies, Plaintiffs argue they can provide no meaningful response to Defendants' vague assertions without more information as to why these paragraphs are defective.  (ECF No. 81 at 18.)

Defendants request that the Court strike portions of the SAC to the extent that these paragraphs do not allege essential elements of a FCA claim.  Rule 12(b)(6) dismissal is reserved

for testing the *legal* sufficiency of claims, not allegations, asserted in a complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). For purposes of a Rule 12(b)(6) motion, it is immaterial whether the two hundred paragraphs listed by Defendants give rise to FCA liability by themselves. As such, the Court finds Defendants have not put forth an appropriate basis for dismissing specific paragraphs from Plaintiffs' SAC under Rule 12(f).

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. Defendants Ashurst, Carver, Abram, Coovert, Litke, Bowman, Martin, Finley, and Seidel are DISMISSED without prejudice;

2. Defendant Dr. Cleveland is DISMISSED without prejudice;

3. All claims as to medical necessity relating to the conduct of Dr. Cleveland are DISMISSED without prejudice;

4. Count III of the SAC is DISMISSED without prejudice;

5. In all other respects, Defendants' Motions to Dismiss (ECF Nos. 77 & 78) are hereby DENIED.

Plaintiffs are granted thirty (30) days from the date of this order to file a Third Amended Complaint.

IT IS SO ORDERED.

Dated: May 22, 2017

Troy L. Nunley
United States District Judge